# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **MACHINE MAINTENANCE, INC.,** | ) | |
| **d/b/a Luby Equipment, Inc.,** | ) | |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:12CV793JCH** |
| | ) | |
| **GENERAC POWER SYSTEMS, INC.,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion for Partial Summary Judgment filed by

Plaintiff/Counter-Defendant Machine Maintenance, Inc., d/b/a Luby Equipment, Inc. (Luby), and

the Motion for Summary Judgment filed by Defendant/Counter-Plaintiff Generac Power Systems,

Inc., (Generac). (ECF Nos. 68, 71). The motions are fully briefed and ready for disposition.

## BACKGROUND[1]

From mid-2005 to December 2011, in the St. Louis market, Luby sold and serviced

generators manufactured by Generac pursuant to a Non-Exclusive Buy/Sell Agreement and Non-

Exclusive Service Agreement with Generac (jointly, the Agreement). The Buy/Sell portion of the

Agreement could be terminated by either party, without cause with 90 days prior written notice. It

could be terminated with cause upon written notification for specified reasons, including Luby's

violation of the Agreement. Luby's sole remedies for termination were Generac's "repurchase of

[Luby's] inventory of products or [Luby's] right to sell such inventory." This remedy was "in lieu

of all other claims [Luby] may have against Generac as a result" of termination. "Under no

---

[1]Facts are not disputed unless otherwise indicated.

circumstances was Generac to be liable based on termination for "compensation, reimbursement or damages for any reason." (ECF Nos. 60.1 ¶ 5). The Service portion of the Agreement stated that either party could terminate "with or without cause by giving thirty (30) days written notice," and that Generac could terminate in the event Luby "fail[ed] to satisfy any term or provision stated [therein] or in [Generac's] manual." Upon termination, Luby was required to "promptly remove from its premises . . . all advertising or other publicity" suggesting it was connected with Generac. (ECF No. 60.2 ¶¶ 5-6).

Luby added a generator division when it began selling Generac products as it previously had never sold or serviced generators. Luby's business was then organized in three divisions: an oil field products division, representing approximately 25-30 percent of Luby's business; a construction equipment division representing approximately 50-55 percent of Luby's business; and a standby generator division, representing 20-30 percent of Luby's business. Luby's sales and service of Generac products fell within its generator division.

The generators subject to the Agreement ranged in size from five to 600 kilowatts. (Agreement App. #1, ECF No. 60.1). Generators manufactured by Generac have diesel or gas powered engines. While Generac denies that its generators "operate under their own power" and "do work," it admits that they "supply power," "operate as an independent power source," and "produce electricity." (ECF. Doc. 70, Luby Statement of Undisputed Facts (Luby's SUF) ¶¶ 4-5; ECF Doc. 77, Generac's Resp. to Luby's SUF, ¶¶ 4-5). Literature produced by Generac about its products states that it "manufactures the widest range of power products in the marketplace"; its "Spark-Ignited" generator performs "the task of generating backup power"; and its "Compression-Ignited" generator "provides more options for heavy-duty backup power." (ECF Nos. 70.3, 70.6).

A Performance Improvement Plan (PIP), signed by representatives of Luby and Generac in April 2011, "outline[d] strategies and tactics" to be "implemented within identified time lines with

the purpose of helping Luby [] improve its over all sales performance." The PIP noted that areas which needed focus included "[a] structured and organized approach to the local Engineering Community where by the % of Generac named projects reache[d] acceptable levels." Specifically, "35% of all projects listed in Dodge were to have Generac named as an approved vendor/supplier/manufacturer." The PIP also provided for Luby's "[b]ringing Generac market share to levels in line with the Generac national dealer average," with certain percentages and dollar amounts delineated. Finally, Luby was to "[f]ully engage in Generac programs." For each focus area, the PIP provided detailed actions which Luby was to undertake. (ECF No. 70.21, PIP, Luby Ex. G). Generac contends that its "market penetration" requirements were embodied in the PIP, and that "market share," as referenced in the PIP is only one part of these requirements. (ECF Nos. 74.4 (Bowers Dep.) at 79; 77 (Generac Resp. to Luby's SUF ¶ 7). In November and December 2011 Luby exceeded Generac's sales goals by 61% and 98% respectively. (ECF No. 24, Answer to Compl. ¶ 17).

In early December 2011, at a meeting in Luby's office in Fenton, Missouri, Generac terminated the Agreement. By letter dated December 8, 2011, Generac provided Luby written notice of its termination of the Agreement. The letter did not specify a reason for the termination, but set forth the process pursuant to which Generac would begin closing Luby's direct account and stated that after ninety days, "Luby would purchase all parts through [Generac's] newly assigned Industrial Dealer." (ECF No. 1.1, Ex. A.) The termination letter was drafted and signed by Paul Bowers, Generac's Vice President of Industrial Sales, although others were involved in the decision to terminate Luby. (ECF No. 70.21, Kelly Dep., at 81). Generac asserts that it terminated Luby based on Luby's alleged failure to satisfy criteria set forth in the PIP and for failing to meet "agreed-upon goals and objectives that were laid out between" Luby and Generac for three years proceeding the PIP's execution. (ECF No. 72.4, Bowers Dep. at 163-64; ECF No. 70.20, Kelly Dep. at 82; Generac

Resp. to Luby's SUF ¶ 10).  Luby asserts that prior to its being terminated by Generac, Generac was

"secretly" engaged in discussions with Clifford Power Systems, Inc., (Clifford) regarding Clifford's

distributing Generac's products in the St. Louis Market, and that Clifford is the "newly assigned"

dealer mentioned in the December 2011 termination letter.  (ECF No. 1.1, Compl. ¶¶ 28, 36).

Although Generac admits that it engaged in discussions with Clifford, it does not admit the subject

matter or time frame of the discussions.  (ECF No. 24, Answer to Compl. ¶ 28).

In Count 1 of its action, Luby alleges Generac violated the Missouri Industrial Maintenance

and Construction Power Equipment Act (the Act), Mo. Rev. Stat. §§ 407.750 et seq., by failing to

give written notice of Luby's termination and by failing to give it the opportunity to correct alleged

deficiencies, and in Count 2 it seeks recoupment.[2]

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law."  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law

determines which facts are critical and which are irrelevant. Only disputes over facts that might

affect the outcome will properly preclude summary judgment.  See Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986).  Summary judgment is not proper if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.  See id.

A moving party always bears the burden of informing the Court of the basis of its motion.

See Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party

must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material

---

[2] Generac's Counterclaims against Luby, alleging Breach of Contract (Count 1), Action
on Account (Count 2), Action for Price of Goods Accepted (Count 3), and Unjust Enrichment
(Count 4) are not the subject of the pending motions.  (ECF Nos. 1.1, 60).

fact, not the "mere existence of some alleged factual dispute." Fed.R.Civ.P. 56(e); <u>Anderson</u>, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. <u>See</u> <u>Anderson</u>, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. <u>See</u> <u>Anderson</u>, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. <u>See id.</u> at 249.

## DISCUSSION

Luby seeks summary judgment in its favor in regard to Generac's alleged violation of the Act (Count 1). It asserts that the Act applies because the generators which were the subject of the Agreement were "power equipment"; because the generators were "power equipment, the Act required Generac give Luby prior written notice of its termination and an opportunity to cure any claimed deficiencies; and, therefore, Luby's failure to do so violated the Act. Generac seeks summary judgment in its favor as to Count 1 based on its contention that Luby's termination is not subject to the Act because the generators at issue are not power equipment under the Act. Alternatively, Generac argues that, even if the generators qualify as power equipment under the Act, Luby's termination falls within one of the Act's enumerated "good cause" exceptions to its notice and opportunity-to-cure requirements. Generac also requests summary judgment in its favor in regard to Luby's claim for Recoupment (Count 2).

The Act provides:

Any manufacturer, wholesaler or distributor of industrial, maintenance and construction power equipment used for industrial, maintenance and construction applications and repair parts therefor, who enters into a written or parol contract with any person, firm, or corporation engaged in the business of selling and repairing industrial, maintenance and construction power equipment used for industrial, maintenance and construction applications and repair parts therefor, whereby such retailer agrees to maintain a stock of parts or complete or whole machines or attachments, shall not terminate, cancel, or fail to renew any such contract without

good cause.  **"Good cause"** means failure by the retailer to substantially comply with essential and reasonable requirements imposed upon the retailer by the contract if such requirements are not different from those requirements imposed on other similarly situated retailers either by their terms or in the manner of their enforcement.

Mo. Rev. Stat. § 407.753.1 (2001) (emphasis in original).

The Act requires that a supplier "provide a retailer at least ninety-days prior written notice of termination, cancellation, or nonrenewal of the contract"; that the notice state all reasons constituting "good cause"; and that the notice "provide that the dealer has sixty days [] to cure any claimed deficiency."  Mo. Rev. Stat. § 407.753.2 (2001).  The Act's notice and opportunity-to-cure provisions, however, do not apply in specified circumstances, including when the reason for termination is that "[t]he retailer has consistently failed to meet the manufacturer's, wholesaler's or distributor's requirements for reasonable market penetration based on the manufacturer's, wholesaler's, or distributor's experience in other comparable marketing areas."  Mo. Rev. Stat. § 407.753.1(8); 407.753(2).

First, the Court will consider whether the generators are "construction power equipment" as defined by the Act.  As previously observed by this Court, "at minimum, 'power equipment' must refer to end use machines and equipment which operate and perform work using some power source, whether electrical, gas, steam, or other, or their own internal power source, such as an internal combustion engine." (ECF No. 21 at 5 (citing <u>McBud of Missouri, Inc. v. Siemans Energy & Automation, Inc.</u>, 68 F.Supp.2d 2016, 1081-82 (E.D. Mo. 1999) ("power equipment" within meaning of Act includes machinery which performs work and operates under its own power source).  Because it is undisputed that generators manufactured by Generac and sold by Luby are engines, which produce power and operate under their own internal power source to do work -- generate power, the Court finds that the generators which were the subject of the Agreement qualify under the Act as "construction power equipment." <u>McBud</u>, 68 F.Supp.2d at 1079 (noting that equipment at issue, and found not covered by Act, did not operate with its own power source, such as an internal combustion

engine, and did not use power to propel itself or do work). To otherwise construe the undisputed facts would be contrary to the plain and ordinary meaning of the term "power equipment" and would be unreasonable. See McBud, 68 F.Supp.2d at 1080 (in absence of statutory definition, terms are given their plain and ordinary meaning; legislature did not intend strained construction of term "power equipment"). The Court finds unpersuasive Generac's reliance on McBud, 688 F. Supp.2d at 1081-82, for the argument that because generators assist or control "end use" machines, they do not perform work as contemplated by the Act. The equipment in McBud, which the court found not covered by the Act, regulated electricity and assisted and controlled end use machines; rather, Generac's generators actually produce power, and thus do work. Cf. id. at 1081 (rejecting argument that equipment that regulates, distributes, or controls electrical power is covered by Act; if "contention were taken to its logical extreme, a distributor of electrical outlets or electrical wiring, whose products were utilized in an industrial, maintenance or construction setting, would fall within scope" of Act).

Next, the Court will consider whether the Act's notice and opportunity-to-cure requirements apply. Generac contends that the exception articulated in Mo. Rev. Stat. § 407.753.1(8) applies because it terminated Luby for "consistently fail[ing] to meet" its "requirements for reasonable market penetration," based on Generac's experience in other comparable marketing areas. Luby contends the notice and opportunity-to-cure requirements apply because it was terminated for reasons other than the Act's stated exceptions. The Court finds that there are genuine issues of material fact necessary to determine (1) the reason(s) Generac terminated Luby, (2) whether the reason(s) implicated the good cause exception of the Act, and, ultimately, (3) whether notice and an opportunity to cure were required and/or were given; and that, therefore, summary judgment should be denied on the issue of whether Generac violated the Act.

As for Count 2, Recoupment, Generac initially argued only that, should the Court grant summary judgment in its favor in regard to Count 1, it should likewise do so in regard to Count 2; if Luby's claim under the Act fails, so must its claim for Recoupment. (ECF Nos. 71 at 2, 73 at 8). It also argued for the first time in its Reply that recoupment does not apply because the Agreement "expressly deals with termination," again without further explanation and without differentiating between the sales and service aspects of the Agreement. (ECF No. 86 at 8).

The recoupment doctrine was designed to allow agents with "at will" "franchise, exclusive agency or distributorship agreement[s]" to recoup their investment upon termination. See Ernst v. Ford Motor Co., 813 S.W.2d 910, 918-19 (Mo. Ct. App. 1991) (for terminable at-will franchise, exclusive agency, or distributorship contracts, "[t]he recoupment doctrine imputes into a contract a duration equal to the length of time reasonably necessary for a dealer to recoup its investment, plus a reasonable notice period before termination"). The doctrine applies to such agreements where they say "nothing about duration and [do] not specifically deal with termination." Id. at 918. Although the Agreement was at will, it was non-exclusive and, in regard to sales, specified Luby's sole remedies, whether Generac terminated with or without cause. The service portion of the Agreement did not address remedies. Nonetheless, the parties have not addressed whether under Missouri law the non-exclusivity of the Agreement precludes recoupment damages, nor have they addressed the differences and relationship between the sales and service portions of the Agreement in regard to termination. Cf. Sofa Gallery, Inc., v. Stratford Co., 872 F.2d 259 (8th Cir. 1989) (under Minnesota law, non-exclusivity of distributorship was fact to be considered in determining extent of recoupment damages to be recovered by at will distributorship rather than precluding recovery altogether). The Court finds, therefore, that there remain genuine issues of material fact regarding the applicability of the recoupment doctrine, and that Generac's Motion for Summary Judgment should be denied in regard to Count 2 of Luby's Complaint.

**IT IS HEREBY ORDERED** that Luby's Motion for Partial Summary Judgment (ECF No. 68) is **DENIED,** in part, and **GRANTED,** in part;

**IT IS HEREBY ORDERED** that Luby's Motion for Partial Summary Judgment (ECF No. 68) is **GRANTED**, to the extent that the Court finds that the generators at issue are power equipment under the Act, and **DENIED**, in all other regards;

**IT IS FURTHER ORDERED** that Generac's Motion for Summary Judgment (ECF No. 71) is **DENIED** in its entirety**.**

Dated this <u>8th</u> day of October, 2013.

/s/Jean C. Hamilton

UNITED STATES DISTRICT JUDGE