UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MACHINE MAINTENANCE, INC. ) | |
| d/b/a Luby Equipment, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:12-cv-793-JCH |
| ) | |
| GENERAC POWER SYSTEMS, INC., ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Luby Equipment, Inc.'s ("Luby") Motion for Actual Costs and Attorneys' Fees ("Motion"), which it filed on November 27, 2013. (ECF No. 158). The Motion has been fully briefed and is ready for disposition.

On April 3, 2012, Luby initiated this action against Defendant Generac Power Systems, Inc. ("Generac") by filing a petition in the Circuit Court for St. Louis County, Missouri ("Petition"). (Cir. Ct. Dkt. Sh., ECF No. 1-1). Generac then timely removed the matter to this Court on May 3, 2012. (Notice of Removal, ECF No. 1). The Petition contained two counts. (Petition, ECF No. 5). Count I alleged a violation of the Missouri Industrial Maintenance and Construction Power Equipment Act ("MCPEA"), which prohibits manufacturers of industrial power equipment from terminating retail contracts without good cause and, more relevant to this Motion, provides a statutory basis for attorneys' fees. (Petition, ¶¶ 40-48). Count II was a recoupment claim. *Id.* ¶¶ 49-61. Generac filed an answer to the Petition on July 3, 2012 after having a motion to dismiss substantially denied. (ECF Nos. 21, 24). It then filed several counterclaims on March 28, 2013, none of which is relevant here. (ECF No. 60).

1

After a discovery dispute and failed cross-motions for summary judgment, (ECF Nos. 41, 88), the matter went to trial on November 4, 2013. (ECF No. 137). Following a two-week jury trial, Luby prevailed on its MCPEA claim. The jury awarded Luby with $50,000 in damages, (Jury Verdict, ECF No. 153), an amount significantly lower than the $6,019,399 Luby sought. (Trial Tr. Excerpt, ECF No. 176, 16:4-8).

Luby filed this Motion on November 28, 2013. (ECF No. 158). In the Motion, Luby seeks the following in attorneys' fees and costs: (1) $728,861.00 in Attorneys' Fees;[1] (2) $34,759.50 in Trial Support Costs; (3) $13,663.59 in Travel & Meal Expenses; (4) $148,861.26 in Expert Witness Fees; (5) $15,183.30 in Electronic Discovery Management; (6) $2,707.50 in Mediation Costs; (7) $6,291.75 in Paralegal Fees. (Motion, ECF No. 158, ¶ 3). Altogether, Luby seeks an award of $950,327.90. *Id.*

## DISCUSSION

*I. Whether Luby Can Recover Actual Costs and Attorneys' Fees*

In this diversity action, Missouri law "governs the availability of attorney's fees[.]" *Weitz Co. v. MH Washington*, 631 F.3d 510, 528 (8th Cir. 2011). Missouri adheres to the "American Rule," under which a party must pay its own attorneys' fees unless there is express statutory authorization or contractual agreement. *City of Cottleville v. St. Charles County*, 91 S.W.3d 148, 150 (Mo. Ct. App. 2002). Luby claims it is entitled to actual costs and attorneys' fees under the MCPEA, which is codified in relevant part at Mo. Rev. Stat. §§ 407.753, 755. Under § 407.753, any manufacturer of industrial power equipment who enters into a contract with a retailer, under which the "retailer agrees to maintain a stock of parts or complete or whole machines or

---

[1] Luby filed a notice on December 18, 2013 that it wished to reduce its attorneys' fees claim to $725,897.00. (ECF No. 171). It did not, however, provide the Court with any basis for the reduction. Because all of the documentation provided to the Court supports the $728,861 figure, the Court has used that starting point in its calculation of the final award.

attachments, shall not terminate, cancel, or fail to renew any such contract without good cause." *Id.* If the manufacturer violates § 407.753, then under § 407.755 the retailer "may bring an action against such manufacturer . . . for damages sustained by the retailer as a consequence of the violation, *together with the actual costs of the action, including reasonable attorney's fees*." *Id.* (emphasis added). According to the Missouri Supreme Court, statutes under Chapter 407—also known as the Missouri Merchandising Practices Act ("MMPA")—are pieces of "paternalistic legislation designed to protect those that could not otherwise protect themselves." *Berry v. Volkswagen Group of America, Inc.*, 397 S.W.3d 425, 433 (Mo. 2013) (*en banc*) (internal quotation marks omitted); *Lift Truck Lease and Service, Inc. v. Nissan Forklift Corp.*, 2013 WL 6243172, at *8 (E.D. Mo. Dec. 3, 2013).

Luby claims that an award of attorneys' fees to a prevailing plaintiff is mandatory under the most natural reading of MCPEA. (Luby Supp. Br., ECF No. 159, at 2-3). Generac contends that Luby's is a strained interpretation, and that the use of the permissive "may" in § 407.755 means courts have discretion whether to award attorneys' fees under the statute. (Generac Opp. Br., ECF No. 170, at 2-4).

No Missouri court has determined whether the MCPEA mandates that plaintiffs who prevail under the act must receive costs and attorneys' fees. Regardless, the parties agree that under the MCPEA courts at least have discretion to award such costs and fees. Because of the paternalistic nature of the statute and the duration of this matter, it is appropriate as a matter of discretion to award reasonable costs and attorneys' fees to Luby and therefore unnecessary to examine the novel issue of Missouri law that the parties contest.

*II. What Amount Luby May Recover*

    *A. Attorneys' Fees*

To calculate the amount of a reasonable attorneys' fees award, Missouri courts begin with the "lodestar," which "is determined by multiplying the number of hours reasonably expended by a reasonable hourly rate in the community." *See Berry*, 397 S.W.3d at 429 n.3. In addition to the lodestar, Missouri courts examine several other factors: (1) the nature and character of services rendered; (2) the degree of professional ability required; (3) the nature and importance of the subject matter; (4) the amount involved or the result obtained; and (5) the vigor of the opposition. *Id.* at 431. Moreover, Missouri courts are deemed to be experts at fashioning attorneys' fees awards and have significant discretion in doing so. *Id.* at 430.

Luby has proposed a total attorneys' fees award of $728,861 based on 2364.50 hours billed by six attorneys at two law firms. (Motion ¶ 3; Lamb Declaration, ECF No. 159-1, at 4-5). Specifically, Luby retained two partners, Nicholas Lamb and John Kingston, and two associates, Brian Lamping and Shaun Broeker, from Thompson Coburn, which is a St. Louis law firm. *Id.* Luby also retained a partner, Gregory Wagoner, and an associate, Rebecca Shope, from Shumaker, Loop & Kendrick ("Shumaker"), a law firm based in Toledo, Ohio. *Id.*

It should be noted at the outset that several factors favor a significant award of attorneys' fees. The matter lasted well over a year and was vigorously contested, as evidenced by the discovery dispute and voluminous filings. Further, Missouri has placed a high level of importance on claims brought under the MMPA, and the provision at issue here falls under that statutory chapter. But other factors—especially inadequate billing records, overlawyering, and the result obtained—require a substantial reduction of the amount requested.

*1. Reasonableness of Time Expenditure*

Luby's attorneys billed 2364.50 hours for this matter, which amounts to $728,861.[2] Specifically, Mr. Wagoner billed 839.40 hours for a total of $266,184; Mr. Lamb billed 329.70 hours for a total of $143,419.50; Mr. Kingston billed 259.10 hours for a total of $86,798.50; Mr. Lamping billed 825.90 hours for a total of $206,475; Mr. Broeker billed 54.40 hours for a total of $11,424; and Ms. Shope billed 56.00 hours for a total of $14,560. (ECF No. 159-1 at 4, ¶ 12).

In support of these figures, Luby has provided time sheets from both Thompson Coburn and Shumaker. (TC Time Sheets, ECF No. 159-1 at 11-44; Shumaker Time Sheets, ECF No. 159-6 at 5-15). The time sheets contain numerous entries. Each entry indicates an amount of time billed by an individual attorney for specific tasks and displays a calculation of the total dollar amount for that entry based on the hourly rate charged by the attorney. These time sheets, although they provide abundant information, are problematic in certain ways. Unclear charges for inter-firm and intra-firm communication, the clarity of which is further obfuscated by "block billing," make it difficult for the Court to determine the reasonableness of Luby's attorneys' time expenditures. And where the time entries are clear, they reflect a considerable redundancy and overlawyering.

*a. Problematic Time Sheets*

A detailed examination of the time sheets reveals that many entries by Luby's attorneys are uncorroborated by other attorneys with whom their time entries indicate communication. For instance, Mr. Wagoner's time sheet indicates that on June 26, 2012 he had a "[c]onference with Brian Lamping regarding e-discovery issues and status[,]" which lasted for 0.3 hours. (ECF No. 159-6 at 6). Mr. Lamping's time sheet does not mention this conference. (ECF No. 159-1 at 13).

---

[2] Generac does not challenge the reasonableness of the hourly rates charged by Luby's attorneys, and Luby has provided enough information for the Court to conclude that those rates are reasonable.

Indeed, it contains no charge at all on June 26, 2012. *Id.* Another example is Mr. Lamb's December 7, 2012 entry, which contains a 0.3 hour charge for "E-mails and telephone calls to and from B. Lamping re discovery responses from Luby and status of information requested by expert witnesses." *Id.* at 18. Again, there is no corresponding charge on that date from Mr. Lamping. *Id.*

There are many other examples of inconsistencies such these, and there are also several instances in which Luby's attorneys seem unable to agree exactly how long particular meetings or conversations lasted. For instance, on September 25, 2013, Mr. Kingston lists a charge for a *0.3* hour "[t]eleconference with B. Lamping and G. Wagoner re damage calculations." *Id.* at 34. On that same date, Mr. Lamping, apparently referring to this same telephone conference, lists a *0.8* hour "[t]elephone call with J. Kingston and G. Wagoner re rebuttal expert report." *Id.* Mr. Wagoner's time sheet makes no mention on that date of a conference with Mr. Lamping or Mr. Kingston. (ECF No. 159-6 at 14).

The difficulty in determining the reasonableness of these time entries is exacerbated by Luby's attorneys' use of "block billing," which "occurs when an attorney lists several activities under one time entry." *EEOC v. Convergys Cust. Mgmt. Gr., Inc.*, 2006 WL 2345541 (E.D. Mo. July 7, 2006). The problem with the use of this billing method by Luby's attorneys is that it is nearly impossible to figure out how much time was spent on the uncorroborated communications and how much time was spent on other activities.

The Court therefore has removed time entries that reflect these infirmities and inconsistencies by subtracting the dollar amount reflected in each entry from the requested award. Where problematic task descriptions were included without demarcation in a block of

other tasks, the Court has removed the entry in its entirety. This has resulted in a reduction of $109,975.

*b. Overlawyering*

Where the billing entries are easier to understand, it becomes evident that this matter was overlawyered. Generac has pointed out a specific example of overlawyering in its sur-reply: that "Luby needlessly had two attorneys [Mr. Wagoner and Mr. Lamping] present during at least 11 out of 17 depositions[.]" (Generac Sur-reply, ECF No. 182, at 8). This assertion is supported by the billing records of both Thompson Coburn and Shumaker. On April 24, 2013, for example, Mr. Lamping billed 8.3 hours for preparation for and attendance of the deposition of Paul Bowers. (ECF No. 159-1 at 23). Mr. Wagoner billed 6.4 hours on that date for attendance at the same deposition and preparation for another. (ECF No. 159-6 at 10). It is not clear either from the vague time entries or from the filings related to this Motion why the attendance of two attorneys was required. Therefore, each instance of Mr. Wagoner's duplicative deposition attendance, including time spent preparing for those depositions, has been removed. Again, where such attendance or preparation appears as one task in a block of others, the entire entry has been removed. This has resulted in a reduction of $40,864.

There are also numerous instances in which it appears that several attorneys worked redundantly on the same project. From May 10, 2012 through May 25, 2012, Mr. Lamb, Mr. Lamping, and Mr. Wagoner all billed substantial time for the drafting of Luby's response to Generac's motion to dismiss. (ECF No. 159-1 at 12; ECF No. 159-6 at 6). The generalized entries, most of which list task descriptions along the lines of "[d]raft opposition to motion to dismiss[,]" (ECF No. 159-6 at 6, 5/20/2012 Entry), do not indicate why two partners and one senior associate were required for completion of this task. Similarly, nothing in the record

indicates why the attention of three partners and one senior associate—Mr. Wagoner, Mr. Kingston, Mr. Lamping, and Mr. Lamb—was necessary or reasonable in relation to the summary judgment motions. Nor is it apparent why the attendance of Mr. Wagoner, Mr. Kingston, Mr. Lamping, and Mr. Lamb was required for the entirety of the trial. Entries such as these reflect, based on the Court's familiarity with the issues and proceedings in this case, unreasonable overlawyering. Luby was free to retain as many attorneys as it wished, but it may not charge Generac for its excesses. Removal of each entry that reflects overlawyering, including removal of entire entries where such redundancies are part of a larger block of time, has resulted in a reduction of $220,562.50.

### 3. Result Achieved

The final factor that requires a substantial reduction is the result ultimately achieved by Luby's attorneys. Luby cites several Missouri cases in support of its contention that "[b]inding Missouri precedent precludes a reduction in Luby's fee award based on the size of the damage award at trial." (Luby Reply, ECF No. 179, at 6). Luby's contention misstates Missouri law. It is true that in Missouri "there is no established principle that the fee may not exceed the damages awarded[.]" (Luby Reply at 7 (citing *Berry*, 397 S.W.3d at 431)). But the Missouri Supreme Court has made clear, at least in the MMPA context, that "[o]ne consideration in determining the amount of attorneys' fees is the result achieved[,]" *Berry*, 397 S.W.3d at 431, and that "[t]he fee should bear some relation to the award[.]" *O'Brien v. B.L.C. Ins. Co.*, 768 S.W.2d 64, 71 (Mo. 1989) (*en banc*). Luby requested over $6 million dollars in damages. The jury awarded it $50,000. This jury award followed settlement discussions in which Generac indicated it would

be willing to settle within a range of $200,000-$250,000.³ This result warrants a substantial reduction. While Generac's suggestion of a 90% total reduction is too high in light of the factors discussed above that favor a significant award of attorneys' fees, a 75% reduction in this particular instance is appropriate given that Luby recovered only 0.08% of the amount it sought.

The Court therefore awards Luby attorneys' fees in the amount of **$89,364.88**.

*B. Costs*

In addition to its request for attorneys' fees, Luby has requested payment for actual costs incurred by it in this matter, which Luby claims amount to $221,466.90. (Motion ¶ 3). This total is composed of $34,759.50 for Trial Support Costs; $13,663.59 for Travel & Meal Expenses; $148,861.26 for Expert Witness Fees; $15,183.30 for Electronic Discovery Management; $2,707.50 for Mediation Costs; and $6,291.75 for Paralegal Fees. These costs, according to Luby, should be awarded as "actual costs of the action" under § 407.755.

Before determining which of Luby's requested categories may be recovered as actual costs, the Court notes that a lack of sufficient proof requires the denial of costs in two of Luby's categories. Luby requests $34,759.50 in Trial Support Costs and $15,183.30 for Electronic Discovery Management. (Motion ¶ 3). The charges for Trial Support Costs are based in part on hourly rates charged by support staff at Thompson Coburn. (ECF No 159-1 at 8, ¶ 21). But the billing sheets Luby has filed provide no support for the conclusion that the hourly rates were reasonable. Nor can the Court conclude based on those time sheets that the time spent or tasks performed were reasonable. The requested charges for Electronic Discovery Management are subject to a similar problem. While Luby has provided invoices from the data storage company its attorneys used, (ECF No. 159-4 at 1-31), there is insufficient information to determine

---

³ While Luby asserts that Generac never made a "firm offer" of settlement, (Luby Response to Sur-reply, ECF No. 183-1, at 2), it does not dispute Generac's claim that Generac indicated $200,000 and $250,000 would be an acceptable settlement range.

whether the amounts paid for those services were reasonable. Therefore, Luby cannot recover any of the amounts requested in these two categories regardless of whether they would fall under the definition of actual costs.

Luby has, however, provided sufficient information to support its requests in the remaining categories. Because the expenses in each category were incurred specifically in relation to this action, they fall within the "actual costs" definition of § 407.755. The only determination left to be made, therefore, is whether the amounts requested are reasonable.

*1. Travel & Meal Expenses*

Luby asks the Court to award $13,663.59 for Travel & Meal Expenses. (Motion ¶ 3). A significant amount of travel was inevitable in this case, which involved out-of-town co-counsel and travel for depositions. Two reductions are merited. First, the Court has already eliminated Mr. Wagoner's billing entries for duplicative attendance of several depositions. The Court also eliminates the corresponding travel entries. This results in a reduction of $3,708.26. Generac is also correct to identify as unreasonable charges for Mr. Lamping's and Mr. Shumaker's stays at a luxury hotel in Milwaukee and for a dinner at Ruth's Chris in Nashville. (Thompson Coburn Receipts, ECF No. 159-5, at 17; Shumaker Receipts, ECF No. 159-6, at 25, 31). The entries corresponding to the stays in Milwaukee have therefore been reduced by 30%. The Ruth's Chris bill has been reduced by 50%. This results in a total reduction of $527.70.[4] The remaining charges, however, seem reasonable. Luby is therefore awarded **$9,427.63** for Travel & Meal Expenses.

---

[4] Mr. Wagoner's stay in Milwaukee has not been reduced by a percentage because it has been eliminated entirely.

*2. Expert Witness Fees*

Luby next requests $148,861.26 for Expert Witness Fees, a total which combines the fees of two experts, Mr. David Blackburn and Mr. Thomas Hilton. (Luby Supp. Br. at 12). Luby seeks $89,749.19 for Mr. Hilton, who testified at trial on the issue of damages, and $59,112.07 for Mr. David Blackburn. *Id.* Luby intended to call Mr. Blackburn to rebut Generac's expert but ultimately determined that Mr. Blackburn would not testify. *Id.* While expert witness fees are properly recoverable as actual costs, the amount Luby has requested is unreasonable.

There is sufficient information to conclude that Mr. Hilton's and Mr. Blackburn's hourly rates are reasonable. It is impossible, however, to tell from Mr. Blackburn's invoices whether the amount of time he spent working on this matter was also reasonable. The invoices from Mr. Blackburn's firm contain only a total of hours worked with no descriptions of how the time was spent or how much time was spent on particular tasks. (*See, e.g.*, Luby Expert Reports, ECF No. 159-3, at 30). Luby's contention that Generac's expert witness billed a similar amount, (Luby Supp. Br. at 12), is insufficient to overcome this lack of evidence, especially considering that Mr. Blackburn did not testify. Mr. Blackburn's conclusory invoices fail to provide a sufficient basis to support an award of actual costs. It is therefore appropriate to remove all of Mr. Blackburn's fees from the final costs award.

Mr. Hilton's time records are significantly more detailed than Mr. Blackburn's, but they present many of the same problems mentioned in relation to the billing entries of Luby's attorneys. For instance, the December 13, 2012 entry of Mr. Hilton's associate lists a conference call with Mr. Lamping. (ECF No. 159-3 at 40). Mr. Lamping billed no time on that date. (ECF No. 159-1 at 18). Moreover, such entries often appear in blocks with other tasks, making it difficult to determine how much time was spent on the other tasks listed. Each of these time

entries has therefore been removed from the total bill, which has resulted in a reduction of $29,037.13. A further substantial reduction is appropriate given the damages outcome in the case. Luby requested over $6 million in damages. The jury, relying on Mr. Hilton's damages assessment, awarded $50,000. It would be unreasonable to require another party to pay the fees of an expert witness whose testimony the jury so thoroughly discredited. The Court therefore further reduces the total of Luby's Expert Witness Fees by 75%.

The Court awards Luby a total of **$22,437.30** for Expert Witness Fees.

### *3. Mediation Costs*

Luby has also requested $2,707.50 for Mediation Costs. (Motion ¶ 3). Generac has not challenged this amount, and it is adequately supported by an invoice from the mediator. (Various TC Bills, ECF No. 159-5, at 47). The Court therefore awards Luby the full amount of **$2,707.50** for its Mediation Costs.

### *4. Paralegal Fees*

Finally, Luby has requested $6,291.75 for Paralegal Fees based on Shumaker's use of a paralegal for certain tasks. (Motion ¶ 3). Generac has not challenged this request, and both the hourly rate and time spent appear to be reasonable. The Court therefore awards the full **$6,291.75** that Luby has requested.

## **SUMMARY**

1. Attorneys' Fees = **$89,364.88**

2. Trial Support Costs = **$0**

3. Travel & Meal Expenses = **$9,427.63**

4. Expert Witness Fees = **$22,437.30**

4. Electronic Discovery Management = **$0**

5. Mediation Costs = **$2,707.50**

6. Paralegal Fees = **$6,291.75**

    **Total (Attorneys' Fees and Actual Costs) = $130,229.06**

    Accordingly,

    **IT IS HEREBY ORDERED** that Luby's Motion for Actual Costs and Attorneys' Fees, (ECF No. 158) is **GRANTED IN PART** and **DENIED IN PART**.

    **IT IS FUTHER ORDERED** that Luby is awarded attorneys' fees in the amount of $89,364.88 and actual costs in the amount of $40,864.18.

Dated this 29th day of April, 2014.

    /s/ Jean C. Hamilton
    UNITED STATES DISTRICT JUDGE